# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL CASE NO. 2:10-cv-00014

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER OF SALE** |
| ) | |
| HERBERT C. NEDERVELD, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is now before the Court upon the United States' Motion for an Order of Sale. [Doc. 9].

On July 8, 2010, the Court entered a default judgment against Herbert C. Nederveld in the above-entitled action. [Doc. 8]. The Court found that the United States "has valid tax liens resulting" from Nederveld's "unpaid tax liabilities." The Court further found that the United States' tax liens "attach to Nederveld's interest in the real property located at 441 Ruby Knoll Lane, Franklin, North Carolina 28743 as that property is more particularly described in the Complaint in this matter." Finally, this Court decreed that "the tax liens of the United States are hereby foreclosed on Nederveld's interest" in the real property at issue in this litigation.

The Government now moves for an Order of Sale. [Doc. 9]. Upon careful review of the Motion and the entire record, the Court will grant the Government's Motion.

Accordingly, **IT IS, THEREFORE, ORDERED** that the United States' Motion for an Order of Sale [Doc. 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1. As found by this Court in its July 8, 2010 Default Judgment, Herbert C. Nederveld is indebted to the United States in the amount of $516,416.26, as of June 30, 2010, on account of his unpaid income tax, penalties, and interest for the 2001 tax year and unpaid employment and unemployment taxes for certain periods in 2001 through 2003. Federal tax liens for those liabilities have arisen in favor of the United States and attached to the real property located at 441 Ruby Knoll Lane, Franklin, North Carolina 28743 as that property is more particularly described as:

   BEING all the lands, easements, privileges and appurtenances as described in and conveyed by the deed from Bennye Lou Pease and husband, William D. Pease and Patricia P. Ross and husband, Jack Ross to Gregg L. Fox and wife, Cora S. Fox, dated February 5, 1981, recorded in the Office of the Register of Deeds for Macon County, North Carolina,

in Book Q-13, Page 103, and being more particularly described therein as follows:

"Being all the land and right of way, subject to the restrictions and encumbrances described in and conveyed by the deed from Addis H. Jacobs, and wife Julia C. Jacobs to Mrs. Bennye Lou Pease and Mrs. Patricia Ross, dated August 26, 1972, and recorded in Deed Book J-9, page 225 of the Macon County Registry, and being more particularly described therein as follows:

"'BEGINNING at a point in the center line of a 20-foot access road, the same being situated North 4 degrees 30 minutes West 20 feet from an iron pipe on the South margin thereof, and said beginning point also being situated the following courses and distances from a point in the center line of State Road No. 1343 at point where there was formerly situated a stone corner of Section 23, to wit: North 40 degrees 00 minutes West 370 feet; South 37 degrees 22 minutes West 66 feet; South 51 degrees 48 minutes West 94 feet; South 57 degrees 53 minutes West 100 feet; North 84 degrees 30 minutes West 60 feet; South 87 degrees 45 minutes West 38 feet; North 4 degrees 30 minutes West 148 feet to said point of beginning; said point beginning also being the common Northernmost corner of Lots 13 and 14; runs thence with the common boundary between said Lots 13 and 14; South 4 degrees 30 minutes East 148 feet to a point, the common Southernmost corner between said Lots 13 and 14; thence North 87 degrees 45 minutes East 38 feet to a point, South 84 degrees 30 minutes East 60 feet, North 57 degrees 53 minutes East 50 feet to a point, the common Southernmost corner between Lots 14 and 15; thence with the dividing line between said Lots, North 31 degrees 30 minutes West passing an iron witness pipe 132 feet,

Whole distance 150 feet to a point a in the center line of said 20-foot access road; runs thence with the center line the same South 63 degrees 42 minutes West 55 feet to a point; thence with a Westerly direction 20 feet to the BEGINNING and being Lot No. 14 of the Ruby Knoll Property owned by Addis h. Jacobs as shown by unrecorded plat thereof made by J.J. Swan, Surveyor, in 1963; and being a part of the Forth Tract of land described in the deed from Ada Dalton, et al, to Addis H. Jacobs and wife, Julia C. Jacobs, dated from Ada Dalton, et al, to Addis H. Jacobs and wife, Julia C. Jacobs, dated October 9, 1959, and recorded in the office of Register of Deeds for Macon County, North Carolina in Deed Book L-6, page 514.

"'The land hereby conveyed is conveyed and accepted subject to the right of way of existing utilities or necessary additions thereto, and the right of way of the 20-foot access road the center line of which forms the Northernmost boundary of the land hereby conveyed.

"'Parties of the first part further convey unto parties of the second part, their heirs and assigns, the right to use in common with parties of the first part, their heirs and assigns, the existing 20-foot access road leading from the Southerly direction to its point of intersection with N.C. State Road 1343.

"'The land hereby conveyed is the same land which is described as Lot # 11 on the revised Ruby Knoll plat, as shown by an unrecorded brochure prepared by Robert W. Dinnes for Cowee Valley Lapidary, Inc."

Parcel no. 11-01074 ("Subject Property").

2. As also found in this Court's July 8, 2010 Default Judgment, the federal tax liens are hereby foreclosed against the Subject Property described at paragraph 1 above, and that the Subject Property in its entirety is ordered sold.

3. That the Internal Revenue Service (the "IRS") Property Appraisal and Liquidation Specialists ("PALS"), is hereby authorized under 28 U.S.C. §§ 2001 and 2002 to offer for sale at public auction and to sell the Subject Property described in paragraph 1 above, with any improvements, buildings, fixtures and appurtenances, thereunto pertaining, which are included in the definition of the "Subject Property."

4. The Subject Property shall be sold free of all liens to the highest and best bidder for cash, at public auction, at either the premises themselves or at the Macon County Courthouse, in accordance with the provisions of 28 U.S.C. § 2001, the times thereof to be announced by the PALS.

5. PALS is directed to publish a notice of sale, describing the property to be sold, once a week for four (4) consecutive weeks immediately prior to sale, in a newspaper of general circulation in

Macon County, North Carolina, and by any other notice that the IRS in its discretion may deem appropriate. The sale shall be made to the highest bidder for cash.

6. That any rights, title, liens, claims or interests in the Subject Property of the United States and Herbert C. Nederveld are discharged upon sale of the property and confirmation of the sale, as described in paragraphs 3, above, and 15 and 16, below.

7. The sale of the Subject Property shall be subject to building lines, if established, all laws, ordinances, and government regulations (including building and zoning ordinances) affecting the Subject Property, and easements and restrictions, if any.

8. The minimum bid for the Subject Property will be set by PALS. If the minimum bid is not met or exceeded, PALS may, without further permission of this Court, and under the terms and conditions of this Order of Foreclosure and Sale, hold a new public sale and reduce the minimum bid.

9. That the successful bidder(s) shall be required to deposit with PALS a minimum of twenty percent of the deposit of his or her bid by certified check, made payable to the United States District

Court, or cash deposit at the time of sale. Before being permitted to bid at the sale, bidders shall display to PALS proof that they are able to comply with this requirement. No bids will be received from any person(s) who have not presented proof that, if they are the successful bidder(s), they can make the deposit required by this order of sale.

10. That the balance of the purchase price for the respective Subject Property shall be tendered to PALS by the successful bidder within 30 days following the date of sale in the form of a certified check payable to the United States District Court for the Western District of North Carolina. The clerk of court shall deposit such funds into the registry for the Court. In the event that the purchaser fails to fulfill this requirement, the deposit shall be forfeited and applied to the expenses of sale, with the remaining amount to be given to the United States, and the Subject Property shall be re-offered for sale or be offered to the second highest bidder in accordance with the provisions of paragraph 3, above. The United States may bid as a credit against its judgment without tender of cash.

11. Pending the sale of the Subject Property, the representatives of PALS are authorized to have free access to the property's premises and to take any and all actions necessary to preserve the premises, including, but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part of the property, until the deed to the property is delivered to the ultimate purchaser of the property. PALS shall take all actions appropriate to conserve and preserve the Subject Property until the deed for the real property is delivered to the successful purchaser.

12. Until the Subject Property is sold, the named defendant, and any other tenants or other persons occupying the real property, shall neither commit waste against the property nor cause or permit anyone else to do so. They shall neither do anything that tends to reduce the value or marketability of the Subject Property nor cause or permit anyone else to do so. They shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the

Subject Property or that may tend to deter or discourage potential bidders from participating in the public auction, nor shall they cause or permit anyone else to do so.

13. All persons occupying the Subject Property shall leave and vacate the property permanently within 30 days of the date this order is filed or the date on which a copy of it is delivered to the Defendants, whichever is later, taking with them their personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Subject Property). Further, all persons occupying the Subject Property shall turn over the keys to the Subject Property, suitably labeled, within 30 days of the date this order is filed or the date on which a copy of it is delivered to the Defendants, whichever is later. If any person occupying the Subject Property fails or refuses to leave and vacate the Subject Property by the time specified in this order, the IRS is authorized to coordinate with the United States Marshal and his deputies to take all actions that are reasonably necessary to bring about the ejectment of those persons. This Order shall serve as a Writ of Assistance or Writ of Possession, as appropriate, and no further

order from this Court shall be required for this purpose.

14. If any person fails or refuses to remove his or her personal property from the Subject Property by the time specified herein, the personal property remaining on the Subject Property thereafter is deemed forfeited and abandoned; and, the IRS is authorized to remove the personal property and dispose of it in any manner they see fit, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale with the balance being distributed as described in paragraph 18 below.

15. That the sale of the Subject Property shall be subject to confirmation by this Court, and upon confirmation PALS shall execute and deliver its deed, conveying the respective Subject Property to the successful purchaser.

16. That, when the sale is confirmed by this Court, the Register of Deeds of Macon County, North Carolina shall cause transfer of the respective Subject Property to be reflected upon that county's register of title.

17. A successful third-party bidder at the sale shall pay, in addition to the amount of the bid, any documentary stamps and Clerk's registry fees as provided by law and be responsible for any current year real estate taxes (or any other fees) that become due after the sale.

18. After the sale is confirmed by this Court, the proceeds shall be distributed as follows:

    a. First, to PALS to cover the expenses of the sale, including any expenses incurred to secure or maintain the Subject Property pending sale and confirmation by the Court. If the Government is the successful bidder, and therefore has not tendered cash, the Government shall tender to PALS the expenses of the sale;

    b. Second, to the Macon County Tax Collector for any property taxes unpaid and matured owing;

    c. Third, to the United States Department of Treasury, through the United States Department of Justice, for the unpaid federal tax liabilities of Herbert C. Nederveld; and

    d. Fourth, any remaining funds to Herbert C. Nederveld.

19. The Court retains jurisdiction over this cause for the purpose of entering all further orders as may be appropriate, including without limitation, deficiency and contempt of court judgments.

**IT IS FURTHER ORDERED** that the Clerk of Court shall immediately send a copy of this Order to all counsel of record; to Defendant Herbert C. Nederveld at 528 Arbour Way, Suwanee, Georgia 30024; to Roger Sweeney, Property Appraisal and Liquidation Specialist, Internal Revenue Service, 410 Amherst Street Suite 350, Nashua, NH 03063; and to the United States Marshal.

**IT IS SO ORDERED.**

Signed: August 12, 2010

Martin Reidinger
United States District Judge